IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ESSEX INSURANCE COMPANY,** <br> **Plaintiff,** <br> v. <br><br> **QUICK STOP MART, INC., and** <br> **FAYEIZ M. ALATTAYA,** <br> **Defendants.** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **CIVIL NO. 07-CV-1909** |

## MEMORANDUM & ORDER

Rufe, J.                                                                    March 37th, 2009

     Essex Insurance Company ("Essex" or "Plaintiff") filed a one-count Complaint for Declaratory Judgment seeking a ruling that it has no duty to defend or indemnify Quick Stop Mart, Inc. ("Quick Stop"), or Fayeiz Alattaya ("Alattaya") in an underlying state court action. In the state court lawsuit, Thomas Simon ("Simon"), who is not a party in the instant case, brought separate claims against Quick Stop and Alattaya stemming from an incident in which Alattaya, while employed by Quick Stop, allegedly struck Simon with a baseball bat inside a Quick Stop store. The Court stayed and placed this matter in suspense in July, 2008. Presently before the Court is Plaintiff's Motion for Reconsideration, in which it asks the Court to lift the stay and rule upon its pending Motion for Summary Judgment. For the reasons set forth in this Memorandum, Plaintiff's Motion for Reconsideration will be granted, as will its Motion for Summary Judgment.

## I.

    Defendant Quick Stop, a corporation organized under Pennsylvania law, operates a convenience store in Philadelphia where the events of the underlying action are alleged to have

occurred.  Defendant Alattaya was employed as a clerk by Quick Stop on August 13, 2005, the date of the primary events at issue in the underlying action.  Plaintiff Essex underwrote a commercial general liability policy insuring Defendant Quick Stop and related "insureds" for the period of August 7, 2005, to August 7, 2006.

## A.  The Essex Insurance Policy

Plaintiff Essex underwrote a commercial general liability policy to Defendant Quick Stop which was effective at the time of Simon's alleged beating ("the Essex Policy" or "Policy").[1]  The Policy consists of several sections of declarations, coverage forms and endorsements.  Two sections of the Essex Policy in particular contain the coverage terms and definitions directly at issue in the instant Motion – the Commercial General Liability Coverage Form ("Coverage Form") and the Combination General Endorsement.

As stated in the Coverage Form, the Essex Policy provides coverage only for sums owed because of "bodily injury" or property damage caused by an "occurrence" in the "coverage territory" during the policy period.[2]  The Coverage Form contains a definitions section that defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[3]

The Coverage Form also provides that in addition to the named policyholder,

---

[1] The Essex Policy is No. 3CQ5807, and is underwritten to both Quick Stop Mart, Inc., and A. Shiekh Yousef, who is not a party in this or the underlying action.

[2] See Compl. for Decl. J., Ex. A at COMM. GEN. LIAB. COVERAGE FORM CG 00 01 10 01, p. 1 ("Coverage Form").  It is not disputed that the alleged assault and battery of Simon took place within the policy "coverage area" and coverage period.  No property damage is alleged by Simon.

[3] See id. p. 14.  "Bodily injury" also receives a special definition in the Coverage Form, and thus appears within quotation marks through the Essex Policy.  The definition reads, "'[b]odily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. p. 12.

2

other individuals may qualify as an "insured," including employees acting within the scope of their employment or performing related duties.[4]  Finally, the Coverage Form sets forth certain exclusions, among them an exclusion for bodily injury that is expected or intended by any insured.[5]  This exclusion is limited, however, in that it "does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."[6]

The Combination General Endorsement explicitly amends the Coverage Form in various respects and is expressly made applicable to the entire Policy.[7]  It contains limitations that further narrow the types of injury or claim to which the Essex Policy applies.  A particular provision states, in pertinent part:

> 10.  This insurance does not apply to 'bodily injury,' . . . 'personal injury' . . . or any injury, loss, or damages including consequential injury, loss or damage, arising out of, caused by or contributed to:
>
>        *       *       *
>
> d.  as a result of and/or arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, insured's employees, patrons or any other person(s); or
>
> e.  as a result of alleged negligence or wrongdoing in the hiring, training,

---

[4] See id. p. 9.

[5] See id. p. 2.  The Coverage Form's "Exclusions" section states, in relevant part, "[t]his insurance does not apply to: (a) Expected or intended Injury[:] '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured.  This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

[6] Id.

[7] See Compl. for Decl. J., Ex. A at Combination General Endorsement, p. 1 ("Comb. Gen. Endorsement"). The first line of text in the Combination General Endorsement reads, "THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM . . . AND APPLIES TO THE ENTIRE POLICY."

placement, supervision or monitoring of others by insured[.][8]

The Combination General Endorsement further provides that, "[w]here there is no coverage under this policy, there is no duty to defend."[9]

## B. Procedural Background

On February 6, 2007, Thomas Simon filed a Civil Action Complaint in the Court of Common Pleas of Philadelphia County, asserting four claims against Quick Stop and one against Alattaya.[10]  In the complaint, Simon alleges that on August 13, 2005, he entered a Quick Stop store and attempted to make payment for certain items to Alattaya, who was working as a clerk in the store at the time.[11]  After an apparent misunderstanding between himself and Alattaya, Simon claims he attempted to cancel the purchase and leave the store, but was intercepted and struck in the head with a baseball bat by Alattaya.[12]  Counts One through Three of Simon's complaint are claims against Quick Stop for "Negligent Hiring,"[13] "Negligent Retention and Supervision,"[14] and "Negligent Security,"[15] respectively.  Count Four is a claim for

---

[8] Id. p. 2.

[9] Id. p. 3.

[10] The underlying lawsuit, Number 000201 of the February Term, 2007, in the Court of Common Pleas of Philadelphia County, is captioned Thomas Simon v. Quick Stop Mart Inc. a/k/a Quick Stop Enterprises d/b/a Quick Stop 1 and Fayeiz M. Alattaya.

[11] Compl. for Decl. J., Ex. B ¶¶ 10-11.

[12] Id. ¶¶ 12-15.

[13] Count I, captioned "Negligent Hiring," includes allegations that Quick Stop was negligent in hiring Alattaya because it either knew and ignored or failed to discover his alleged criminal background and violent propensities, and failed to have in place adequate procedures around hiring, and in particular, around the screening of job applicants. See id. ¶¶ 26-27.

[14] Count II, captioned "Negligent Retention and Supervision," contains allegations that Quick Stop was negligent by retaining yet failing to adequately supervise and monitor Alattaya, despite his criminal background and propensity for violence, by "failing to consider and take into account" the fact that Alattaya kept a baseball bat

"Assault and Battery" against Alattaya, and Count Five is a claim of "Vicarious Liability" against Quick Stop for Alattaya's alleged acts.

Default judgments were entered in the Court of Common Pleas on May 2, 2007 in favor of Simon and against Alattaya and Quick Stop on all counts after no other attorney timely appeared and Essex declined to defend defendants based on the asserted inapplicability of the Essex Policy. Essex was permitted to intervene as a party in the case on May 22, 2007. Defendants obtained their own counsel on May 25, 2007. Also on that date, Defendants' new counsel filed a petition to open or strike the default judgments. The petition was denied on June 27, 2007. On May 30, 2007, Essex filed a motion to stay the state court proceedings to permit resolution of the instant declaratory judgment action. The stay request was denied on June 26, 2007. Under a reservation of rights, Essex then assigned counsel, Catherine Straggas, Esquire, to represent the interests of the Defendants. Straggas filed a motion for reconsideration of the order denying the petition to open or strike the default judgments. The motion was denied on August 16, 2007. Straggas then filed a notice of appeal to the Superior Court of Pennsylvania regarding the denial of the motion for reconsideration. This appeal was withdrawn on October 30, 2007.[16]

The relevant state court docket shows that an assessment of damages hearing was held in state court on January 16, 2008, at which damages of $210,000 were assessed against Quick Stop and Alattaya and in favor of Simon. Essex, as intervenor, filed a motion for post-trial

---

behind the store counter while he worked, thus potentially posing a danger to the public. See id. at ¶¶ 29-30.

[15] Count III, captioned "Negligent Security," contains allegations that Quick Stop failed to provide adequate protection for members of the public by not hiring security personnel or establishing appropriate security procedures, given the history of crime in the store and vicinity.

[16] Essex avers that Straggas withdrew the appeal "as apparently instructed by her clients, and without the agreement of Essex," who was paying her. Pl.'s Mot. Reconsid. ¶ 16.

5

relief that was denied by order of February 21, 2008.  The Defendants filed motions for post-trial

relief and remitittur which were denied on March 24, 2008.  On June 23, 2008, upon motion of

plaintiff Simon, final judgment was entered.  Essex filed a notice of appeal on July 21, 2008.  In

the notice Essex states that the appeal intended to cover all previous Orders, including the June

23, 2008 Order entering final judgment and those Orders docketed March 27, 2008 (denying

Defendants' motions for post-trial relief and remitittur), February 21, 2008 (denying Essex's

motions for post-trial relief), January 16, 2008 (assessing damages against Defendants), and June

28, 2007 (denying Defendants' motion to strike or open the default judgments against them).[17]

Upon an order directing it to do so, Essex filed a Statement of Matters Complained of on Appeal

pursuant to Pa. R.A.P. § 1925(b) on August 14, 2008.  The Statement enumerates several

matters, but does not include an appeal from the trial court's refusal to strike or open the default

judgments.[18]  The state trial court has not yet addressed the § 1925(b) Statement.

Meanwhile, in May of 2007, Essex filed the present declaratory judgment action

pursuant to 28 U.S.C. § 2201 seeking a ruling that under the terms of the Essex Policy it has no

---

[17] See Order of March 11, 2009 [Doc. No. 46], Ex. 2 (August 1, 2008 letter of Brendan Mulligan, Esq., Ex. E (Essex's Notice of Appeal from Entry of Final Judgment in state court)("Notice of Appeal")).

[18] See id., Ex. 3 (March 5, 2009 letter of Marie S. Reilly, Esq., Ex. B (Essex Ins. Co.'s Statement of Matters Complained of on Appeal in Thomas Simon v. Quick Stop Mart, Inc, et al.).  The Statement enumerates the following matters: (1) that the trial court did not apportion responsibility during the assessment of damages hearing; (2) that the assessed damages amount of $210,000 was contrary to the weight of the evidence; (3) that the trial court erred by considering future medical expenses where no evidence regarding such damages was presented; (4) that insufficient evidence supported the damages for lost wages assessed by the trial court; (5) that the trial court erred in procedural respects at the assessment of damages hearing; (6) that the trial court erred by not permitting Essex to participate in the assessment of damages hearing as intervenor; (7) that the trial court erred in failing to stay the action prior to hearing post-trial motions, entering final judgment and assessing damages in favor of the instant declaratory judgment action; and (8) that the trial court abused its discretion by failing to recuse despite its purported lack of impartiality, bias and prejudice against Essex.  See id.  To the extent it does not address the default judgments against Alattaya and Quick Stop, the § 1925(b) Statement differs from Essex's previously filed Notice of Appeal, which purports to intend to address all prior orders and specifically identifies the order granting default judgment. See Notice of Appeal.

duty to defend or indemnify either Alattaya or Quick Stop in the underlying state court action. Essex timely filed its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a),[19] and after extensive briefing the matter was submitted in January, 2008. However, understanding from the current record that the state court proceedings were still subject to significant litigation including an appeal that could result in the opening of the existing default judgments and a new trial, on July 28, 2008 the Court issued a Memorandum and Order staying this action until a final state court resolution was reached.[20] Essex filed the instant Motion for Reconsideration on August 7, 2008. Defendants Alattaya and Quick Stop filed no opposition.

### C. Motion for Reconsideration

Through its Motion, Essex argues the Court should lift the stay because it was imposed on the basis of a crucial factual error.[21] Namely, Essex asserts the Court was incorrect that an appeal or further litigation was pending or contemplated that could fundamentally alter the status of the state court judgments. In its August 7, 2008 Motion, Essex reports that by late August, 2008, it expected as intervenor to file a § 1925(b) Statement of Matters Complained of on Appeal that would not "request the [Pennsylvania Superior Court's] review of any issue that would impact the coverage determinations sought in the pending Motion for Summary Judgment before this Court."[22] As noted, it appears that Essex did file a § 1925(b) Statement in state court

---

[19] Rule 56(a) of the Federal Rules of Civil Procedure provides, in relevant part, "[a] party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim."

[20] Doc. No. 41. A more detailed recitation of the procedural background for the July 28, 2008 Order is contained therein.

[21] A motion for reconsideration may be granted to correct a manifest error of fact in a court ruling. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

[22] Mot. Reconsideration ¶ 22.

on August 14, 2008.  No other party has filed a notice of appeal in that court.

Although Essex had stated in its Motion that it would promptly supply this Court with a confirmation and copy of the § 1925(b) Statement, it did not do so until March 5, 2009. Upon review of the § 1925(b) Statement, it appears that the matters enumerated therein pertain to the assessment and allocation of damages, the trial court's decision not to stay the case, and that court's purported bias against Essex as intervenor, and do not risk a disturbance of the default judgments entered against Alattaya and Quick Stop.  It further appears that the state court has not addressed the § 1925(b) Statement since its filing.  This Court stayed the instant action because it perceived an uncertainty as to whether the default judgments against Alattaya and Quick Stop would be appealed and potentially stricken and opened, permitting a state trial on liability.[23] Since the state court's judgments as to liability are not touched by Essex's noticed appeal, the stay is no longer necessary, and the questions presented in Essex's Motion for Summary Judgment may be addressed.  Accordingly, the stay will be lifted, and Essex's Motion to Reconsider the Order imposing the stay, dismissed as moot.

### D.  Essex's Motion for Summary Judgment

A court should render summary judgment where "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24]  In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the

---

[23] See July 28, 2008 Mem. Op.

[24] Fed. R. Civ. P. 56(c) (2007).

non-moving party and accept that party's version of disputed facts as true.[25]

The disposition of the instant Motion requires the application of the insurance law of Pennsylvania, as Plaintiff claims – and Defendants deny – that Plaintiff has no duty to defend and indemnify Defendants under Pennsylvania law.[26]  A review of the applicable law is appropriate.

### 1.  Insurer's Duty to Defend and Duty to Indemnify Under Pennsylvania Law

"An insurer's obligation to defend an action 'is fixed solely by the allegations in the underlying complaint.'"[27]  The duty to defend attaches if the complaint at issue describes injuries which are potentially covered under the relevant policy.[28]  Conversely, there is no duty to defend where it is apparent that the policy does not cover the injuries alleged.[29]  The allegations in the underlying complaint – and not the causes of action pleaded – must inform the court's determination in this respect.[30]  Similarly, "it is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend."[31]  Thus, to determine

---

[25] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[26] It is undisputed that Pennsylvania law governs the interpretation of the contract of insurance at issue here.

[27] QBE Ins. Corp. v. M&S Landis Corp., 915 A.2d 1222, 1225 (Pa. Super. Ct. 2007) (quoting Erie Ins. Exch. v. Fidler, 808 A.2d 587, 590 (Pa. Super. Ct. 2002)).

[28] Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005).

[29] Britamco Underwriters, Inc. v. O'Hagan, No. 94-1160, 1994 WL 477551, at *3 (E.D. Pa. Sept. 2, 1994) aff'd, 60 F.3d 814 (3d Cir. 1995).

[30] QBE Ins. Corp., 915 A.2d at 1225.  In QBE Ins. Corp., the court went on to add, "[i]ndeed, 'to allow the manner in which the complainant frames the request for redress to control in [such a] case . . . would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies." Id., (quoting Mutual Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999)).

[31] D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. Ct. 1986) (citing Warner v. Employers' Liability Assurance Corporation, 133 A.2d 231 (Pa. 1957); Wilson v. Maryland Casualty Company, 105 A.2d 304 (Pa. 1954)).

whether a claim may come within the coverage of a policy, "the court must ascertain the scope of the insurance coverage, and then analyze the allegations in the complaint."[32]  Where proceedings as to liability occur before a determination is made about whether there is a duty to defend, an insurer declines to defend at its own risk.[33]

The duty to defend is distinct from and broader than the duty to indemnify.[34] While the duty to defend arises when the underlying complaint alleges injuries that possibly fall under a policy's coverage, the duty to indemnify "arises only when the insured is determined to be liable for damages within the coverage."[35]  It follows as a matter of law that there is no duty to indemnify where there is no duty to defend.[36]

### 2. Interpretation of Contracts for Insurance Under Pennsylvania Law

The law in Pennsylvania with respect to the interpretation of insurance contracts is "well settled."[37]  Interpretation of such a contract is a matter of law for the court.[38]  The aim of a

---

[32] Sphere Drake, P.L.C. v. 101 Variety, Inc., 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999) (citing Britamco Underwriters, Inc. v. Grzeskiewicz, 639 A.2d 1208, 1210 (Pa. Super. Ct. 1994)).

[33] Belser v. Rockwood Cas. Ins. Co., 791 A.2d 1216, 1219-20 (Pa. Super. Ct. 2002) (citing Board of Pub. Educ. of the Sch. Dist. v. National Union Fire Ins. Co., 709 A.2d 910, 913 (Pa. Super. Ct. 1998) (en banc) ("[a]n insurer who refuses to defend its insured from the outset does so at its peril . . . because the duty to defend remains with the insurer until it is clear the claim has been narrowed to one beyond the terms of the policy")).

[34] Sikirica, 416 F.3d at 225.

[35] Sphere Drake, 35 F. Supp. 2d at 427 (quotation omitted).

[36] Sikirica, 416 F.3d at 225-26 (citing Haver, 725 A.2d at 746 n.1).

[37] Regents of Mercersberg College v. Republic Franklin Ins. Co., 458 F.3d 159, 171 (3d Cir. 2006).

[38] Lexington Ins. v. Western Penn. Hosp., 423 F.3d 318, 323 (3d Cir. 2005).  Moreover, Pennsylvania law makes it the province of the courts to construe insurance contracts to ascertain "the existence or non-existence of coverage."  Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007).

court in interpreting an insurance contract is to determine the intent of the parties.[39]  The inquiry

begins at the language of the policy in question.[40]  The "policy must be read as a whole and

construed according to the plain meaning of its terms."[41]

A court must give effect to language in an insurance contract that is

unambiguous.[42]  "Contractual language is ambiguous 'if it is reasonably susceptible to different

constructions and capable of being understood in more than one sense.'"[43]  Ambiguous language

in a contract of insurance must be construed against the insurer.[44]  Such construction "further[s]

the contract's prime purpose of indemnification," and recognizes the fact that the insurer controls

the policy language establishing the scope of coverage.[45]  However, the Third Circuit Court of

Appeals and the Pennsylvania Supreme Court have repeatedly warned courts against straining to

find ambiguity in insurance contract language.[46]  Indeed, policy language should be read to avoid

---

[39] Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983); Regents of Mercersberg College, 458 F.3d at 171 (citing Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

[40] Standard Venetian Blind Co., 469 A.2d at 566.

[41] C.H. Heist Caribe Corp. v. American Home Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981).

[42] Lexington Ins., 423 F.3d at 323.

[43] Regents of Mercersberg College, 458 F.3d at 172 (quoting Hutchinson v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986)).

[44] Standard Venetian Blind Co., 469 A.2d at 566.

[45] Kvaerner Metals Div. of Kvaerner U.S. Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 893 (Pa. 2006).

[46] See Lexington Ins., 423 F.3d at 323 (citing Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982)); see also St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981) ("a court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them").

11

creating or finding ambiguity wherever possible.[47]

While the insured has the burden of demonstrating coverage under an insurance policy,[48] the insurer has the burden of demonstrating the applicability of any policy exclusions.[49] A court must construe policy exclusions against the insurer,[50] enforcing them only if plainly displayed and clearly applicable.[51]

### 3.  Discussion

Essex seeks a ruling that there are no genuine issues as to whether it had a duty to defend or indemnify Alattaya and Quick Stop in the underlying state court action, arguing that the provisions and exclusions of the Essex Policy, viewed alongside the allegations in the underlying complaint, unambiguously dictate this result.  The merits of Essex's Motion will be evaluated as to each Defendant in turn.

### a.  Defendant Alattaya

In the underlying complaint, Simon brings one count against Defendant Alattaya, Count Four, captioned "Assault and Battery."  In support of the claim, Simon alleges that Alattaya struck him in the head with a baseball bat without provocation or his consent, and not in an act of self-defense.  Alattaya argues that there is a genuine fact issue as to whether his actions were justified.  If so, Alattaya argues, Essex would have a duty to defend him because Simon's

---

[47] USX Corp. v. Liberty Mutual Ins. Co., 444 F.3d 192, 198 (3d Cir. 2006); St. Paul Fire & Marine, 655 F.2d at 524.

[48] See, e.g., Erie Ins. Exchange v. Transamerica Ins. Co., 533 A.2d 1363, 1366-67 (Pa. 1987).

[49] Miller v. Boston Ins. Co., 218 A.2d 275, 277 (Pa. 1966).

[50] Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998).

[51] Sphere Drake, 35 F. Supp. 2d at 428 (citing Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir. 1985)).

resulting injuries would potentially be covered under the policy.  To establish this purported

genuine fact issue, Alattaya notes that he was acquitted of criminal assault charges in the

Philadelphia Court of Common Pleas in a criminal action stemming from the same underlying

event, and submits supporting evidence to show that he acted out of fear for his safety when he

struck Simon with the baseball bat.[52]  However, in deciding if Essex has a duty to defend

Alattaya, the Court must look exclusively to the allegations in the underlying complaint to

determine whether, if true, Simon's allegations could give rise to coverage under the policy.[53]

Essex argues it has no duty to defend Alattaya because it is clear from the face of

Simon's complaint that Alattaya's actions (1) constituted an assault and battery; (2) were

intentional and expected; (3) were criminal and malicious; (4) do not constitute an "occurrence"

under the Essex Policy; and that (5) Alattaya is not an "insured" under the Essex Policy.  If

supported, any of these grounds could operate to exclude coverage under the Essex Policy.

Because the Court is persuaded that Essex has no duty to defend Alattaya by plain operation of

the Essex Policy's assault and battery provision, the Court will address only the first asserted

ground for relief.

We consider the assault and battery provision in the Combination General

Endorsement of the Essex Policy.  First, the Court finds it clear that the provisions of the

Combination General Endorsement govern, or "trump," any apparently related, similar or parallel

provisions found in the policy's Coverage Form, as the first line of text in the Combination

General Endorsement reads, in all capital letters, "THIS ENDORSEMENT AMENDS THE

---

[52] See Defs.' Sur-reply, unmarked exhibit ("Report of J.F. Terry & Assocs." at p. 2).

[53] D'Auria, 507 A.2d at 859.

LIABILITY COVERAGE FORM . . . AND APPLIES TO THE ENTIRE POLICY." This

statement is plain and would be readily noticed by anyone reading the Essex Policy, and thus will

be given its clear meaning and intended effect by the Court.

Next, as noted previously, the Combination General Endorsement states, in

pertinent part:

> 10. This insurance does not apply to 'bodily injury,' . . . 'personal injury' .
> . . or any injury, loss, or damages including consequential injury, loss or
> damage, arising out of, caused by or contributed to:
>
>     *   *   *
>
> d.  as a result of and/or arising out of assault and/or battery, or out of any
> act or omission in connection with the prevention or suppression of such
> acts, whether caused by or at the instigation or direction of any insured,
> insured's employees, patrons or any other person(s).

The terms "assault" and "battery" are unambiguous.  In the well-established definition articulated

by the Pennsylvania Supreme Court, in tort, an assault is "an intentional attempt by force to do

any injury to the person of another, and a battery is committed whenever the violence menaced in

an assault is actually done, though in ever so small a degree, upon the person."[54]  The terms "as a

result of" and "arising out of" are likewise unambiguous in the tort context in Pennsylvania.[55]

The Court thus considers that the Essex Policy clearly and unambiguously does not apply to

claims of injury or damages resulting from an assault and battery.  Because, as seen above,

Simon's allegations with respect to Alattaya are that without provocation Alattaya struck him in

the head with a baseball bat causing injury, there is no possibility that Simon's allegations against

---

[54] Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994).

[55] See Essex Ins. Co. v. RMJC, Inc., No. 01-4049, 2007 WL 3243628, at *3 (E.D. Pa. Nov. 1, 2007) (holding the term "arising out of" is unambiguous and collecting cases interpreting Pennsylvania law).

Alattaya fall within the scope of Policy coverage.  These allegations describe an assault and

battery.  They control the present inquiry notwithstanding Alattaya's argument that he did not in

fact commit an assault and battery.[56]  Indeed, as the Pennsylvania Superior Court has noted:

> [T]he insurer owes a duty to defend if the complaint against the
> insured alleges facts which would bring the claim within the
> policy's coverage if they were true.  It does not matter if in reality
> the facts are completely groundless, false or fraudulent.  It is the
> face of the complaint and not the truth of the facts alleged therein
> which determines whether there is a duty to defend.[57]

In sum, Essex had no duty to defend Alattaya in the underlying action because

Simon's complaint alleges an assault and battery, and the Essex Policy unambiguously does not

cover injuries arising from assaults and batteries.

## b. Defendant Quick Stop

In the underlying complaint, Simon brings four counts against Defendant Quick Stop.

Count One claims negligent hiring, Count Two claims negligent retention and supervision, Count

Three claims negligent security, and Count Five claims vicarious liability for the claimed assault and

battery by Alattaya.  Essex argues these claims are specifically excluded from coverage by operation

of several provisions of the Combination General Endorsement.  Quick Stop does not seriously argue

the claims of negligence in hiring, retention or supervision are not excluded by clear policy terms,

but does contend that coverage as to the negligent security claim is at least ambiguous, noting that

the policy does not expressly denominate negligent security as a specific exclusion.  Upon a review

---

[56] Defendant also argues that Essex owed it a duty to defend because the assault and battery was committed by an employee of the insured, not a third party.  The Essex Policy exclusions, however, are clearly broad enough to encompass the assault and battery Alattaya is alleged to have committed.  As already seen, it applies to injuries "arising out of, caused by or contributed to . . . as a result of and/or arising out of assault and/or battery . . . *whether caused by . . . any insured, insured's employees, patrons, or any other person(s).*"  (emphasis added).

[57] D'Auria, 507 A.2d at 859.

of both the face of the underlying complaint and the Essex Policy, this Court concludes that none of the negligence allegations against Quick Stop potentially fall within the policy's coverage.

First, the Court's ruling that the Essex Policy excludes coverage for the alleged act of Alattaya dictates a ruling that the Policy excludes coverage for Simon's Vicarious Liability claim under Count Five, which is predicated on Alattaya's alleged act. The Court so rules. Essex has no duty to defend Quick Stop as to Count Five.

Next, in support of Count One, "Negligent Hiring," Simon alleges that Quick Stop was negligent in: ignoring Alattaya's known history for violent or criminal acts when hiring him; failing to conduct a criminal background search; failing to properly screen applicants for employment such as Alattaya; hiring Alattaya, who kept a baseball bat behind the store's counter; failing to properly train employees in hiring procedures; and failing to put adequate employee screening procedures in place or failing to adhere to such policies. The Combination General Endorsement of the Essex Policy which, as seen above, controls matters it addresses, expressly states that it does not apply to personal injury or damages coming "as a result of the alleged negligence or other wrongdoing in the hiring, training, placement, supervision or monitoring of others by insured."[58]  The Court finds no ambiguity in this Policy provision. It clearly disclaims coverage for claims based on alleged carelessness or negligence by Quick Stop in hiring, training and placing its employees or in supervising them thereafter. Because Count One of Simon's complaint alleges that Quick Stop was negligent in the steps it took or failed to take in hiring Alattaya, the Essex Policy does not potentially apply to it, and Essex has no duty to defend Quick Stop as to that count.

In support of Count Two, "Negligent Retention and Supervision," Simon alleges

---

[58] Essex Policy, Combination General Endorsement ¶10(e).

variously that Quick Stop was negligent in: retaining Alattaya as an employee despite his known

criminal history and violent propensities; retaining Alattaya despite knowing he kept a baseball bat

behind the counter of the store where he worked; failing to supervise Alattaya; lacking policies and

procedures regarding the monitoring of employees such as Alattaya; and failing to review Alattaya's

performance.  These allegations also fall under the unambiguous Combination General Endorsement

provision disclaiming coverage for personal injury or damages coming "as a result of the alleged

negligence or other wrongdoing in the hiring, training, placement, supervision or monitoring of

others by insured."[59]  The provision pertains to Quick Stop's conduct in placing, supervising and

monitoring employees on an ongoing basis after their hire, and clearly encompasses Simon's

allegations as to employee retention, monitoring, supervision  and review under Count Two.  These

allegations could not potentially implicate coverage under the Essex Policy, and Essex therefore has

no duty to defend Quick Stop with respect to Count Two.

With regard to Count Three, "Negligent Security," Simon alleges Quick Stop was

negligent in: failing to provide security for Simon on the date in question; failing to put in place

adequate security measures despite Alattaya's known violent tendencies; failing to implement

general security policies; failing to impose policies regarding physical contact between

employees and customers; lacking policies regarding disturbances and emergencies; failing to bar

employees from keeping baseball bats behind the counter; and "failing to protect . . . Thomas

Simon, a business invitee of the Defendant, Quick Stop, from being assaulted by the Defendant []

Alattaya."  The assault and battery provision of the Combination General Endorsement reviewed

previously once again applies.  As noted, this provision disclaims insurance for injuries that

---

[59] Essex Policy, Combination General Endorsement ¶10(e).

come "as a result of and/or arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts whether caused by or at the instigation or direction of any insured, insured's employees, patrons or any other person(s)." The provision is unambiguous. As relevant here, it provides that no coverage is available under the Essex Policy for injuries alleged to have been caused by a failure by Quick Stop to prevent or suppress an assault and battery by anyone on the premises. Thus, although the provision does not use the words "negligent security" it clearly precludes coverage for injuries resulting from the conduct alleged in Count Three of the underlying complaint. Indeed, as just seen, Simon alleges that Quick Stop's negligence in security entailed failing to prevent or suppress the alleged assault by Alattaya. His claimed injuries are those sustained in the alleged assault. Under the clear and unambiguous terms of the assault and battery provision, Essex has no potential obligation to insure this claim. Because the injuries alleged in the underlying complaint are clearly excluded from the coverage of the Essex Policy, Essex owes Quick Stop no duty to defend Count Three.

Confronting similar allegations and insurance contract assault and battery provisions, courts in this District have reached similar conclusions.[60] For example, in <u>Alea London Limited v. 65 Bog Inc.</u>, the district court granted an insurer's motion for judgment on the pleadings in a declaratory judgment action because it found that the relevant policy's assault and

---

[60] <u>See, e.g.</u>, <u>Alea London Limited v. 65 Bog Inc</u>, No. 05-1046, 2006 WL 1030247 (E.D. Pa. April 19, 2006); <u>Markel International Ins. Co. v. Banks Management Co.</u>, No. 04-cv-1549, 2005 WL 1607396 (E.D. Pa. July 6, 2005); <u>see also</u> <u>St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's Inc.</u>, 582 F. Supp. 865, 868 (E.D. Pa. 1984) (applying exclusion for "any act or omission in connection with the prevention or suppression of an assault or battery" to claim of negligence in failing to prevent assault).

18

battery exclusion unambiguously precluded coverage in the underlying tort lawsuit.[61]  In the

underlying suit, which related to a violent attack at a tavern, the insured tavern owner was

accused of many forms of negligence: failure to properly supervise the premises; failure to

supervise or adequately regulate the conduct of individuals present; failure to warn of the

presence of dangerous individuals; failure to post sufficient security personnel; failure to enforce

policies regarding the physical removal of dangerous individuals; and failure to provide adequate

security.[62]  Collectively and in sum, the court found that these allegations claimed acts or

omissions by the insured tavern owner in failing to prevent or suppress the assault that formed

the basis of the underlying lawsuit.[63]  The assault and battery provision in the relevant policy of

insurance was materially similar to the one at issue in the present matter.[64]  The district court

determined that all of the underlying negligence claims against the insured "[went] to 65 Bog's

acts or omissions in failing to prevent the assault that occurred," and held that the assault and

battery exclusion applied to preclude coverage for all such claims.[65]  The court thus ruled that the

insurer had no duty to defend or indemnify the insured in the underlying action, and granted

judgment for the insurer.  As to Count Three of the underlying complaint, the instant action is

---

[61] 2006 WL 1030247.  Like the instant action, when the motions for judgment in Alea were ruled upon by the district court, default judgment had already been entered in the state court action against the underlying defendant, the insured.

[62] Id. at *1 n.1.

[63] Id. at *6.

[64] The assault and battery exclusion in Alea excluded from coverage any bodily injury "[a]rising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any insured or an employee or agent of the insured."  Id. at *5.

[65] Id. at *6.

materially similar to <u>Alea</u> and is decided in the same manner.[66]

## III.

For the reasons set forth above, the Court will remove the stay in this matter and dismiss as moot Essex's Motion for Reconsideration.  Additionally, the Court finds that Essex has no duty to defend either Alattaya or Quick Stop in the underlying state court action.  Because Essex has no duty to defend, it has no duty to indemnify the Defendants in that action.[67]

Accordingly, the Court will grant Essex's Motion for Summary Judgment.  An appropriate order follows.

---

[66] The instant action is not materially similar to the case <u>QBE</u>, 915 A.2d 1222, which the parties discuss at some length in their briefs.  In <u>QBE</u>, the Pennsylvania Superior Court reviewed the applicability of an assault and battery clause in an insurance policy to a violent event that occurred on insured premises and gave rise to a lawsuit. <u>Id.</u> at 1224.  The provision under consideration was substantially similar to the one at issue here.  <u>See id.</u> at 1228. However, the allegations in the underlying complaint in <u>QBE</u> were different than those made by Simon in Count Three.  <u>See id.</u> at 1226-27.  The underlying decedent plaintiff in <u>QBE</u> alleged that his injuries were caused not by an assault, but by the negligence of the insured's employees, both in the manner in which they restrained him in a "choke hold" and in their failure to quickly administer first aid or summon emergency services after he was subdued and plainly not breathing.  <u>Id.</u>  The Superior Court ruled that the relevant assault and battery clause did not exclude these negligence claims because they alleged that negligence was a direct cause of injury separate from any intentional assault, and did not merely allege a negligent failure to prevent an assault.  <u>Id.</u> at 1228-29 (citing <u>Essex Ins. Co. v. Starlight Mgmt. Co.</u>, 198 Fed. Appx. 179 (3d Cir. 2006) (unpublished opinion) (on similar facts, holding assault and battery provision did not exclude coverage for allegations of negligence that directly caused injury) and distinguishing <u>Acceptance Ins. Co. v. Seybert</u>, 757 A.2d 380, 383 (Pa. Super. Ct. 2000) (holding an assault and battery clause similar to those reviewed herein precluded an insurer's duty to defend insured in an underlying lawsuit wherein plaintiff's negligence claims "contain[ed] no allegations that [his] actual injuries were caused in any way other than by assault and battery")).  Here, in contrast, Simon exclusively alleges injuries resulting directly from an assault and battery.  Hence, the Essex Policy's assault and battery provision applies.

[67] <u>Sikirica</u>, 416 F.3d at 225-26 (citing <u>Haver</u>, 725 A.2d at 746 n.1).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **ESSEX INSURANCE COMPANY,**<br>**Plaintiff,**<br>v.<br><br>**QUICK STOP MART, INC., and**<br>**FAYEIZ M. ALATTAYA,**<br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL NO. 07-CV-1909** |

### ORDER

**AND NOW**, this ___ th day of March, 2009, upon consideration of Plaintiff's

Complaint for Declaratory Judgment [Doc. No. 1] and all responses thereto, Plaintiff's Motion

for Summary Judgment [Doc. No. 20] and all responses thereto, and Plaintiff's Motion for

Reconsideration [Doc. No. 42], and for the reasons set forth in the attached Memorandum, it is

hereby **ORDERED** as follows:

    1. The stay in this matter is **LIFTED**. The Clerk of Court is <u>directed</u> to remove

this action from the suspense docket and restore it to the active docket;

    2. Plaintiff's Motion for Reconsideration [Doc. No. 42] is **DISMISSED** as moot;

    3. Plaintiff's Motion for Summary Judgment [Doc. No. 20] is **GRANTED**.

Further, it is hereby **DECLARED** that Plaintiff has no duty to defend or indemnify either

Defendant herein in <u>Thomas Simon v. Quick Stop Mart Inc. a/k/a Quick Stop Enterprises d/b/a</u>

<u>Quick Stop 1 and Fayeiz M. Alattaya</u>, Court of Common Pleas of Philadelphia County, February

Term, 2007 No., 000201.

It is so **ORDERED**.

BY THE COURT:

CYNTHIA M. RUFE, J.